First matter is Scott v. Shartle. Before I call that, I see Mr., no, I thought I saw Rich Goldberg. Somebody in the courtroom looks just like Mr. Goldberg. I owe him a call. I thought he was stalking me, trying to get me to return his phone call, but it's not Rich Goldberg. Okay, ready to proceed? Yes, Your Honor. Thank you, Your Honor. Michael Glick, Kirkland & Ellis, appointed counsel on behalf of Appellant Joseph Scott, and I would like to reserve three minutes for my rebuttal. All right. Chief Judge McKee, and may it please the Court. The district court erroneously denied Appellant Joseph Scott's request for habeas relief. Mr. Scott is not and should not have been sentenced as a career offender. If he were sentenced today, he would not receive the mandatory career offender enhancement because one of the two predicate offenses used to apply that enhancement, his 1997 guilty plea for second-degree assault in Delaware, was not a valid predicate offense. I think you're right about that. He has two concurrent sentences in the same length. Is that right? He does. What difference does it make? Let's assume you win on this argument because it seems to me it has some merit to it. And so the enhancement under 841B goes away. He still has the same sentence. How can you get over the miscarriage of justice hurdle? Well, his sentencing range when he was sentenced in the pre-Booker mandatory guidelines range was 360 months to life. So I know he has two concurrent sentences, but the range would be the same if he were resentenced now and then without the career offender enhancement and given the opportunity to apply for the Amendment 706, Section 3582 reduction, which would then put him at a guidelines range of 324 to 405 months. And if sentenced at the bottom of his applicable range like he was back in 2001, his sentence, as we note in our brief, would be reduced by about 10 percent, which would put him at 324 months instead of the 360 months that he's currently serving right now. How old is he? He was 17 in 1996, so that would put him about 35 years old today. I think he's scheduled to be released in, I believe right now, 2026 in his early 50s. And I know, you know, it is a 10 percent sentence reduction, and we submit that that is the miscarriage of justice if you're forced to serve the improper career offender enhancement. What should we do with Sykes? I know the government is not really addressing that issue for purposes of this appeal, but what should we do with Sykes, and how should we view Begay or Maggie Harbis? No, but the Supreme Court seemed to have suggested about that line of cases in Sykes. Well, I would note that in Sykes the Supreme Court did not expressly overrule Begay. Even the government, as you note, only briefly addressed it in a footnote and then seemed to abandon it, admitting that Johnson and Lee remain good law in this circuit and that purely recklessness crimes cannot constitute crimes of violence to apply the career offender enhancement. And if you look at the statute under which the prisoner was or the defendant was sentenced in Indiana under Sykes, the Supreme Court noted the stringent mens rea requirement in that case, which called for knowingly or intentional conduct and didn't involve recklessness at all in that statute. I think Begay remains good law. I think Johnson and Lee in this court remain good law. Well, obviously this isn't a direct appeal. So a lot of the briefing focused on the safety valve or savings clause of 2241. Maybe you could deal with that. And we've got some jurisprudence on this. In your brief, you talk about our – and, boy, these are not the easiest names to pronounce. Dor-Sandoville? Dor-Sandoville. Yeah, okay. But one case that I thought – and that was a Judge Slover opinion. Obviously you guys have focused on it a lot. But this is a second Judge Slover opinion, a subsequent one. Ochre Creek, I guess? A 2002 opinion. Are you familiar with that case? In that case, it seemed to limit Dor-Sandoville a bit. Could you deal with that? Well, I think, first of all – and I may be getting it wrong as well, Your Honor. I pronounce it Oke-Ree-Kee, so maybe we're both wrong. We won't tell you. There you go. Well, I think, first of all, that case involved an Apprendi error, which I think is a procedural error, which is a little bit different. And I would also note that the government – But it had to do with sentencing, right? I mean, the Dor-Sandoville case dealt with potentially – I mean, and you can understand it. With the Bailey case and all, that defendant may not have been guilty of something that was prohibited by law. I mean, you can kind of understand that. In the subsequent case, it dealt with sentencing and did not – I mean, it was a different set of facts. And, in fact, the second case didn't say it's a rare occasion when we use that safety valve. How do you fit within that safety valve? Well, I think Mr. Scott fits within that safety valve because, like the defendant in Dor-Sandoville, he is being punished for conduct that the law no longer deems criminal, which is he is currently serving a career offender sentence, which is based on two predicate offenses and then your third offense. That's a sentencing issue, isn't it? It is. But I think here – I mean, there is some interplay here between whether this is a substantive violation or a procedural violation. I think at core, this is a substantive error because you have a prisoner serving a longer sentence than he otherwise would have received under the guidelines. Your client's not in a situation where he's serving time for conduct that is no longer criminal. The issue is how well – how that conduct should be debated, but the conduct is still criminal. I mean, yes, he was convicted of a crime by a jury and sentenced in 2001. It's just sort of – the enhancement of his sentence and the impact of that is having him in prison longer than he otherwise would be. And I note that the government makes a series of concessions in this case with regard to 2241 and how it would apply. The government agrees that 2241 can be used as an alternative avenue for habeas relief. The government agrees that Section 2255E, the Safety Valve or Savings Clause, allows for a resort to 2241 for sentencing errors, including those based on the guidelines. And they agree that 2255 doesn't provide Mr. Scott relief here. Yet having made each of these concessions and with Mr. Scott sort of all the way down to the 10-yard line, the government seeks to draw an arbitrary line between mandatory or Section 2241 challenges based on statutory maximums. I'm going to try to stall out at the 10-yard line. I have a team that can't get past the 10-yard line. I'm proud to say, Judge McKee, that I hope you're happy with the branch recent draft. How in the heck did you do that? Talk about research. I am not, but I appreciate the shout-out. I actually had, as I was sitting at council table, a vivid memory of when I did my swearing-in some five years ago. You made a comment. I clerked for one of the judges in this court who sits in Pittsburgh, and I think you attacked the Pittsburgh football team during that argument. Well done, Mr. Vick. But I return. I did help you with your argument. I digress. In any event, in Mr. Scott's case, he was sentenced in the pre-Booker era, where the guidelines were, in fact, mandatory, such that when the guidelines were treated as the functional equivalent of a mandatory minimum. So, in essence, Mr. Scott, when he received the career offender enhancement, it was akin to establishing a new mandatory minimum. But the O'Kreek case, that also dealt with it. That was an apprendi, post-apprendi case, when the apprendi wasn't in and potentially could have received a lower sentence. Isn't it exactly the same? I'm not sure it is, because I think that the nature of the violation there, the apprendi error versus here, a career guideline error, where the career offender enhancement has been applied in a mandatory fashion, and Mr. Scott has not had the opportunity to challenge that because of an intervening change in the applicable law. Whereas apprendi, again, was, you know, largely has been classified by this court as a procedural error. I think here, the other courts of appeals, this court has implied that Begay is a substantive statute. It affects the length of time that a defendant could serve in prison. It's not an intervening change in the law, though. It's an interpretation in a gloss and a language in a statute. I think that's correct. But other courts of appeals have held that that change is retroactively applicable. So we would submit it is a substantive change in the law. Courts in both the Fourth Circuit and Seventh Circuit have held that prisoners serving sentences under this career offender guideline can challenge those, and that forcing a prisoner to serve an improperly enhanced sentence would constitute a miscarriage of justice. And we submit that that's exactly what's happening here with Mr. Scott. And I think that Mr. Scott appropriately fits within the savings clause framework, because you have a situation here where 2255E is inadequate and ineffective, and he is able to ‑‑ it is forcing him to serve a detention, and he can challenge his detention as 2255E implies or states in order to attack that sentence. You seem to ‑‑ I mean, you'd like us to embrace, I suppose, the Bryant versus Warden 11th Circuit decision. Isn't this case more like the Ambon-Gilbert case now, the 11th Circuit? This case certainly has similarities to the Ambon-Gilbert case. The government and Mr. Scott obviously have some disagreement about how that case came out. That case came out a deeply divided Ambon panel, which held only after a panel of that court went the other way. And as the 11th Circuit acknowledged in Bryant, the circuits are certainly far from uniform with regard to the extent of the savings clause and how far it should apply. I would point you instead to the 7th Circuit's case, Brown v. Carraway, the Fourth Circuit's recent case in Whiteside, which was a 2255 case, but nonetheless still acknowledged that a miscarriage of justice would apply if a prisoner were to serve an improperly enhanced career offender sentence. And I think the line that the court drew in Gilbert with regard to statutory maximums, we would submit that because Mr. Scott was sentenced in the pre‑Booker era, he is serving what is akin to a mandatory sentence. A mandatory minimum was imposed upon him based on the guidelines range he was given. And he was put in that bucket, the 360 to life bucket, from which he could not get out. Now, yes, at the time he was sentenced, his guidelines range would have been 360 to life anyway, but as we note in our papers, he's been denied the opportunity to seek Section 3582 relief based on Amendment 706, which came out about six years after he was sentenced. And he has not had the opportunity to do that. And I would note, Mr. Scott himself sort of is following ‑‑ I don't want to say the system has wronged Mr. Scott, but if you think about sort of where he is, he was sentenced pursuant to a sentencing enhancement, the career offender enhancement, which has since been held to be improper as it applied to him. He was sentenced under a mandatory guidelines regime, which has since been held to be improper. He was sentenced prior to Amendment 706, which has since reduced the applicable range of his sentence. And I think the confluence of these sentencing changes has made it such that Mr. Scott is serving a sentence that is very likely longer than the range he would have otherwise received. And so the question is, on collateral review, should he be able to attack that sentence? And we submit that he should. So I see now that my red light is on. I'm happy to ‑‑ Did you reserve time? I did reserve three minutes. Okay. Thank you, Mr. Scott. Good morning, Your Honors, and may it please the Court, Michael Rotker from the Department of Justice on behalf of the respondent, Warden Shortall. As the Court is aware, there are two discrete issues in this case, whether Mr. Scott was improperly classified as a career offender, and if so, whether that type of error is redressable. We stand on our submission on the first issue, but I'd like to focus here today on ‑‑ Let's get past the first issue. Yeah, that's fine. I'm happy. You know, assuming arguendo, the Court believes there was error. And let me try to walk the Court through the way I would urge the Court to analyze the issue. And I'll start off by saying that I do agree with my distinguished opponent. There are some areas of common ground between the parties. There are three of them in particular. The first is that the parties do agree that the Savings Clause is reserved for the correction of fundamental errors. The second point of agreement is that this Court's decision in Dorsenville, which involved a Bailey error, is the paradigm example of a fundamental error, because, as Your Honor pointed out, you may have been convicted of something that's not a crime. And the third area of agreement is that there are ‑‑ that a Bailey-type error is a sufficient example of a fundamental error, but it's not the only type. That is to say, there are at least some sentencing errors that can rightly rank as fundamental. Okay? So we're in agreement on those points. Now, I do want to clarify one point. I did hear my opponent say something, that the government agrees that 2241 relief is available for guidelines errors. That's clearly not correct. That may have been a misstatement. What we agree is that, as Bryant v. Warden in the Eleventh Circuit held, is that 2241 relief is available for ACCA errors. And the reason why, and the way I would ask the Court to approach the issue is to say, we know that Bailey errors are the fundamental ‑‑ they're the best example. So what the Court should be looking for, we submit, the best way to view this, what is the sentencing analog of a Bailey error? What is the sentencing equivalent of being convicted of something that's not a crime? And the ACCA error is the best example. And here's why. There are two distinguishing characteristics that make an ACCA error the analog of a Bailey error. The first is that both types of errors implicate fundamental values of the highest importance in our system. It's the separation of powers. What do I mean by that? In the Bailey context, Your Honors, an individual has been convicted of something that we thought was a crime, but the Supreme Court has later said the statute doesn't reach that far. And in our constitutional system, it's been established since the very early days of our republic, there are no common law crimes. Congress has to define a crime. There has to be ‑‑ You're making a very good argument, but I guess the problem I have with it is Mr. Glick is simply asking for an opportunity to file a 3582C motion. If he were to prevail, the judge could look at the situation and say, okay, I agree that that second degree assault plea out of Delaware does not rise to a crime of violence under the statute or under the guideline, but if you know what you did, as far as I'm concerned, that conduct is so egregious, I'm going to give you the same sentence anyhow. But at least he's saying he ought to be able to make that argument to the judge. The judge may agree with him. The judge may disagree with him. He may end up with exactly the same sentence, but he should be able to ask. Well, with all due respect, I think there's a little bit of a sort of circular bootstrapping logic in that argument because he doesn't get 2241 relief unless he can demonstrate that there's a fundamental defect in his sentence. And our position is forget the 3582 issue for a second. He's got the burden to come forward and show that there's a fundamental error in his sentence, and we don't think he's made that threshold showing. And so he's not entitled to 2241 relief in the first instance. Even if the judge assumed that what happened in Delaware was a much more serious offense that figured into the guidelines in a way that it does not figure in? Yes. And that gets to the point that I'm trying to make here, which is that we don't think the guidelines errors as a category rise to the level of fundamental defects. They're not the same as ACCA errors because, as I was pointing out, they don't imply the ACCA, for example, just to complete the thought, if the ACCA is misapplied, the defendant has necessarily received a sentence that exceeds the statutory maximum for the crime. It's a 15-year minimum under ACCA, but if that doesn't apply, there's a 10-year maximum. That's why an ACCA error is the analog of a Bailey error, because you have a court imposing a sentence that goes beyond the limits set by Congress. So Bailey errors and ACCA errors share that separation of powers theme. When you're dealing with a guidelines error, it doesn't implicate those values. And the point to make here is that just as there's a gulf between regular error and prejudicial error, there is a gulf between prejudicial error and fundamental error. It's not just that every error that lengthens a sentence, as Okereke makes clear, it's not just that any error that lengthens a sentence automatically fits into the fundamental box. We have to find some principled way to define what's fundamental. And what we're suggesting and what the 11th Circuit embraced is this notion that a separation of powers-based sentence and error truly ranks as fundamental, and rightly so. Because we can't have common law crimes. We can't have common law punishments. Guidelines errors don't implicate those core values. The sentencing range for the two convictions in this case was 10 to life on one count and 5 to 40 on the other. The 360-month sentence is within those ranges. Nothing in a guidelines error can ever affect a congressionally determined legislative range for the crime. And that's why it's different. It may be the kind of error that if this were raised on direct review, would merit a remand. But this is collateral review, as was pointed out. The standards are higher, and rightly so. The court in Okereke and in Dorsonville and in a plethora of other cases has said the savings clause is an extraordinary remedy for the correction of fundamental errors. And if those terms are to mean anything, it can't just be that any error that has some potential impact on a sentence, and I say some potential impact because, as was pointed out in the briefs and conceded here again this morning, it's the same guidelines range even without the career offender enhancement. I understand the 3582 point, but let's put that aside for a minute. He faced the exact same guidelines range with or without the enhancement. So it's hard to say that as a categorical matter career offender errors rise to this level of being fundamental defects. ACCA errors are different, and rightly so. We have conceded that position in this court. We have conceded it in other courts throughout the country. But the guidelines are different. They're qualitatively different in terms of the nature of the error that results. And so that's why we do believe there is a principled basis for drawing the distinction that we urge. Now — Did you make the same argument before Booker? I'm sorry, Your Honor? No. Did you make the same argument before Booker? I don't think so because largely the arguments that we're dealing with here today were spawned by Begay, which came after Booker. All right. What we are doing, though, this case illustrates that there are still some defendants that were sentenced before Booker that are raising these claims. Now, there are a lot of defendants who were sentenced after Booker that are raising challenges to their career offender classifications and enhancements. But the government's position has consistently been, as I said, there is a principled distinction on separation of powers grounds between ACCA sentences, which are the analog of a Bailey error, and guidelines errors. So was the Bryant case rightly decided then? Yes. The government conceded. I litigated that case, and the government conceded error in that case. We agreed with the defendant, and the Eleventh Circuit actually appointed an amicus. Because those cases were ACCA, they were under 2241, and the convictions were based on predicates that before Begay had been held to qualify but were subsequently deemed non-qualifying. And they met all the prerequisites. They're stringent prerequisites, and rightly so. But it was appropriate because those individuals were sentenced to terms that the district court never had statutory authorization to impose. And, again, at the risk of repeating myself, that's what makes it a fundamental error. How about Gilbert? Do you agree with the Gilbert majority? That was my case as well, too, Your Honor, yes. I mean, Gilbert, we think the Eleventh Circuit largely has gotten it right. And there is another case now pending. How about Brown v. Carraway? Well, that's the Seventh Circuit decision, which goes opposite from Gilbert. I would say that another one of my handy work, Your Honor. In Brown, we were forced to concede the point, though, because Brown was based on a prior Seventh Circuit decision that rejected our central submission here about guidelines errors. So, yeah, the short answer is we think that Bryant was right. Gilbert and Brown v. Carraway are in conflict. But we think that Gilbert Court's reasoning is correct, and that is the view that we would urge the Court to follow. There really are no meaningful distinctions between this case and Gilbert, and we would urge the Court to follow. If I may, one additional point that I think is worth mentioning. At the end of Mr. Scott's reply brief, he makes the point that the Court can safely rule in his favor because this case involves a career offender error, and that if you do so, if you open the door to 2241 for career offender errors, you won't necessarily be opening the door to all kinds of guidelines claims. With all due respect, Your Honor, we don't believe that that's a principled limitation. We don't believe that it's a workable rule to try to say that there's some way to line draw between career offender errors and other guidelines errors. The typical argument that's advanced in these kinds of cases is, well, the career offender error is much more serious than other guidelines errors. There's certainly some truth to the fact that the career offender bump-up is significant, Your Honors, but there are lots of guidelines enhancements that can be even more severe. But what about, it seems to me the facts here are such that they would limit the universe of people who would qualify for relief in this situation. You have a situation where the Court assumed that something was graded under the guidelines in a way that was much more serious than it should have been graded. Right. That's a limiting factor. It is one limiting factor, but that happens a lot of times. Courts oftentimes take, for example, a hypothetical, the loss calculations under the guidelines. There are courts that have sort of narrowly construed, you know, what types of loss can be considered in determining the loss amount. And the bump-up on the loss level can be anywhere from two to 30 levels. Yeah, but even there, the culpability of the individual's conduct, the state of mind, if you will, of the person being sentenced,  It resulted in a greater loss or a smaller loss. Correct. Here you've got a situation where the person may or may not have engaged in conduct in the past, which would suggest a greater need to either punish or deter in imposing a sentence. It seems to figure in very differently than a loss calculation. With all due respect, I'm not sure I see that as differently. I mean, in either case, what you're dealing with is what the conduct was and whether, you know, whether it sort of justifies a lengthier sentence. I mean, you can look at, there's a whole range of enhancements. I mean, I think what Your Honor is getting at, perhaps if I may speculate, It's a recidivism. No. I'm sorry. The recidivism and the very nature of the reasoning, the drug that drove the court's decision in Lewisville, the nature of the culpability of the conduct. Is it reckless conduct? Is it conduct that is intended to inflict some kind of harm? That kind of defendant, those are two very different defendants. If someone had in the past done something that intended to engage in substantial risk of physical harm or bodily injury or death, it's different than someone who engaged in risk, which might have led to $1,000 versus $100,000 of loss in a bank account. Perhaps. I mean, you know, the Court, I mean, perhaps there are ways that we can draw these distinctions, but our concern is largely on the fact, I mean, and I would urge the Court to look at the Eleventh Circuit's opinion in Gilbert because they do have an extensive discussion of really, I mean. We looked at it. I'm sorry? We looked at it. To read it, I'm sorry, Your Honor. I didn't mean to dissuade you. What I'm trying to say is on this specific issue, Gilbert's a very long opinion. I don't want the Court to miss out on the highlight, which is where the Court talked about the fact that it is very difficult. I mean, there may be bases for drawing these distinctions, and I'll certainly defer to the Court, but we are concerned about the fact that, you know, once you open the door a little bit, you start down the slope of allowing collateral relief for all kinds of guidelines errors, and there is. I can't remember who said it, but it was a famous dissent where the responding justice said, well, that was the argument of the majority of the Supreme Court, and the dissent responded by saying that my colleagues are afraid of too much justice. Right. I appreciate that. It's not a concern with too much justice, I think. What the concern really is is about preserving the integrity of the Savings Clause. This Court has described the Savings Clause in Dorsonville and Okarike and other cases as an extraordinary remedy for correcting fundamental errors. If we start saying that every sentence in error that increases the sentence, like in Okarike, you know, if that qualifies as fundamental, we're starting down transforming something that's supposed to be narrow and extraordinary. We're making it very broad and rather ordinary. And so I think there has to be a balance here. This is not – remember, too, this isn't even a first collateral attack. It's a second one. And finality interests have some role to play here. And the higher – the further along we get in the process, the more demanding the showing is to get relief. We simply don't think that that standard has been met. Since you've been involved in a lot of these cases, maybe you could comment on our jurisprudence so far. Are we along the right – going along the right road, Dorsonville and Okarike? Yes, Your Honor. Dorsonville is absolutely correct. There's no circuit that has disagreed with that rule. There are a number of cases that were decided after Bailey that have said, as I said before, that is the paradigmatic fundamental injustice. We have no interest, the court has no interest, the defendant has no interest in keeping a man in jail if he didn't commit a crime. I mean, I think – I would hope that we can all agree upon that point. Now, what's come up since Begay is we're dealing with sentencing-related challenges. And as I said, I think the challenge for this court is to find the sentencing analog of a Bailey error. And that's the way other courts have tried to approach the issue. The Eleventh Circuit has the two cases in Bryan and Gilbert that I think illuminate ACCA errors are more like Bailey, Guidelines errors are not. Well, you heard your adversary say that the error here is really akin to what happened in Dorsonville. It's not. As I think was – our view, at least, respectfully, is that it's not. The conduct is still a crime. There's no dispute that the conduct was criminal. The question is how much time does he have to serve in prison for the conduct. Now, the other point that –  The issue is the label. But a court, as I mentioned to Mr. Glick, could go back, look at the conduct and say, in my mind, given what I want to achieve with my sentence, I find that conduct merits the very same sentence, even though it doesn't qualify for the ACCA enhancement. That's why you're arguing it's not a fundamental error. Right. Correct. And I think, you know, my time is diminishing here, but I do want to end with just one additional point, which is at the very end Mr. Glick was pointing out that because these are mandatory guidelines, that the error in applying them is sort of analogous to the ACCA because the mandatory nature of the guidelines, I think what he's saying, makes them more like a statute. That's simply incorrect as an analytical matter. We cited the court in our brief to the Supreme Court's 2008 decision in a case called Rodriquez, not Rodriguez, but with a Q, Rodriquez, where the Supreme Court was very clear in saying guidelines, even when they're mandatory, they didn't set true maxima in the way that a statute does because courts always had some residual discretion to depart from the guidelines range. And I think other circuits have looked at that issue and said, yes, the guidelines, in light of Rodriquez, we can't say that the guy, what they're really trying to do is fit the mandatory nature of the guidelines error, make it more like our concession that it's an ACCA error, but that the, it doesn't fit, because a mandatory guidelines range is not a hard ceiling in the way a statutory maximum is. So to answer Your Honor's question, yes, we do think the court's jurisprudence is on the right road. I would, if I may, just add one more point on Ocorrique. I do agree with much of what Mr. Glick said. It is an Apprendi error, which is a different, qualitatively different type of error, if I might just finish. It doesn't involve a substantive change in the meaning of a statute. It's a procedural error, and it's a constitutional error, which is a little bit different. But I do think Ocorrique was correct in reaffirming that the Savings Clause is a narrow and extraordinary remedy not designed for the correction of any and all sentencing errors. The Court has no further questions. I thank the Court for its time. Thank you. Thank you, Your Honor. Very persuasive, Mr. Glick. I'm sorry? I'm not sure who's going to win this thing here, but I'll tell you, Rodker made a very persuasive argument. Mr. Rodker is well-versed in the habeas cases throughout the various circuits. I did not mean to misspeak or otherwise misrepresent the government's position with regard to the availability of relief for guidelines errors. We would submit that even if you don't want to go so far as to say that any error that might affect his sentence would fall within the 2241 and be a fundamental defect, we do think that the career offender guideline is different. As this Court has recognized, that guideline, the residual clause, is interpreted much like the ACCA. One moment, Your Honor. And as other courts have recognized, the career offender guideline is different. It is a mistake of law here, not a mistake of fact like other guidelines enhancements are. I think it's a mistake of law, though. Respond to what Mr. Rodker says. Given our narrowing language in all of our cases that have addressed this issue, to talk about not just error but the unique and fundamental nature of the error that you have to have to get relief under 2241, why would it be that a sentencing error would fit that kind of unique, especially on collateral relief as to your point about, why would a sentencing error fall into that category? It's kind of a sentencing error. A judge can do the same thing on remand, exactly the same thing. I don't think a judge can do the same thing on remand. And as you pointed out, if the judge, if this case is remanded and Mr. Scott is resentenced, the judge could very well decide that 360, 360 months is an appropriate sentence. But in this case, the career offender guideline sort of barred the judge from having that discretion. How did it? Because Mr. Scott was automatically placed in that 360 month to life range under the mandatory pre-Booker guidelines and was unable to sort of get out of that bucket. And I would point out that this is not sort of opening the floodgates to any sentencing error that may be challenged under 2241. I submit this is actually a narrow category of prisoners who could be eligible for this. The career offender guideline is, I think, different than other guidelines. This is a mistake of law here based on an intervening change in the law and one that has been made retroactively applicable. And I might add a fourth point is Mr. Scott was sentenced in the pre-Booker era, again, where the guidelines were mandatory. So this is not opening the floodgates to just any, to challenge just any guidelines error, but specifically, again, mistakes of law that were changed by intervening rulings that have been made retroactively applicable on a collateral review. And I would submit that the scope of the, quote, unquote, floodgates is much different. And finally, just on the finality point, you know, Mr. Rodker is right that the further you get down here, there is an interest in finality. But as the Fourth Circuit recently put in the Whiteside case, putting the bureaucratic goal above getting it right for a prisoner like Mr. Scott, who is serving an improperly enhanced sentence, I don't know that finality should necessarily trump in a case like this. Thank you. Excellent argument on both sides, particularly also. I didn't mean to cite your argument by commenting on Mr. Rodker's incredible presentation. Both of you did a wonderful job. I hope to see you both back here. Thank you, Your Honor. Thank you. Thank you, Your Honor.